UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

THOMAS K. McCAUGHEY,

    Plaintiff,

v.           105CV199

BANK OF AMERICA, N.A.,

    Defendant.

## ORDER

### I. INTRODUCTION

This breach of contract case traces back to an attempt in the 1980s to renovate the Lamar Building in downtown Augusta, Georgia. During the renovation process by Boxwood Associates (Boxwood), its partners, Thomas McCaughey and Joe Murphy, personally guaranteed their partnership's debt to one of its principal lenders, the Bank of America (BoA). When the time came to renew their guarantees, McCaughey refused but Murphy wished to continue, so Murphy alone guaranteed the renewal and BoA released McCaughey from liability.

After the Lamar project's failure, BoA settled both Murphy's and Boxwood's debt, but as part of that settlement it received a 50% stake in an ongoing lawsuit that Murphy had filed against his then-former partner, McCaughey. Pursuant to that litigation, Murphy recovered $1 million from McCaughey, then paid BoA it's 50% stake. In response, McCaughey filed this action and raises various state-law claims, insisting that BoA is required to give him that 50% stake. BoA moves for summary judgment.

### II. BACKGROUND

McCaughey and Murphy organized Boxwood to rehabilitate and operate the Lamar Building. Doc. # 23 ¶ 1. Boxwood entered into financial transactions with BoA and Citibank to secure financing for the rehabilitation project. Doc. # 34 (McCaughey affidavit). BoA lent $5.4 million to Boxwood and entered a Reimbursement Agreement with Boxwood that was personally guaranteed by Murphy and McCaughey. Doc. # 23 ¶ 2-3. Toward the end of 1986, Boxwood borrowed $3.6 million more from Citibank. *Id.* ¶ 4.

In 4/88, BoA and Boxwood sought to extend Boxwood's debt, but McCaughey refused to renew his guarantee on it. BoA then decided to extend the credit with Murphy as the sole guarantor and released McCaughey from any personal liability. *Id.* ¶ 7. The release stated that McCaughey

> shall have no personal liability to the Bank arising out of such additional extension of the Letter of Credit by the Bank beyond July 16, 1988 (specifically, but without limitation, no liability to the Bank for reimbursement of any draw, legal fees or commissions, under or in connection with the Letter of Credit as so extended), and liability of [McCaughey] to the Bank arising out of such additional extension of the Letter of Credit shall be limited to the assets of Boxwood Associates.

Doc. # 23, exh. 1.

In 10/88, Murphy brought a state-court action against McCaughey for monies owed to Boxwood. *Id.* ¶ 8. Six months later, BoA refused to further extend Boxwood's credit;

consequently, over $5.4 million became due. *Id.* ¶ 11. Murphy entered negotiations with BoA to work out Murphy's and Boxwood's debt. *Id.* ¶¶ 12-14. In 7/89, Murphy offered BoA a portion of any proceeds he would obtain in his state-court action against McCaughey; BoA accepted that offer and settled Murphy's debt for, *inter alia*, 50% of Murphy's potential litigation recovery from McCaughey. *Id.* ¶14-17. BoA's agreement with Murphy required only that Murphy pursue that litigation "in good faith." *Id.* ¶ 22; doc. # 33 ¶ 16.

In 6/92, McCaughey sent a letter to BoA demanding that it drop Murphy's "baseless" suit and stating that he would bring an abusive litigation claim if BoA did not "abandon" the case. *Id.* ¶ 23. BoA responded that it had no control over Murphy's suit. *Id.* ¶ 24. After years of litigation, a jury returned a $487,500.00 verdict in Murphy's favor for McCaughey's partnership obligations respecting Boxwood's dealings with Citibank. *Id.* ¶ 27-28. The judgment was affirmed on appeal. *Murphy v. McCaughey*, 262 Ga. App. 570 (2003). Doc. # 23 ¶ 28. With interest, Murphy collected $1,007,992.08 from McCaughey, of which Murphy paid $305,928.72 -- 50% of the net proceeds -- to BoA. *Id.* ¶¶ 29-30.

McCaughey then brought this action, alleging that BoA's actions leading to receipt of a portion of the Murphy-McCaughey litigation proceeds give rise to liability for: (1) money had and received, doc. # 1 at 24-30, ¶ 29; (2) unjust enrichment, *id.* ¶ 32; (3) breach of the release contract, *id.* ¶ 36; and (4) civil conspiracy, *id.* ¶ 39-40.

### III. ANALYSIS

BoA first moves for summary judgment on McCaughey's equitable claims -- money had and received, and unjust enrichment. Doc. # 22 at 8-13. "An action for money had and received is merely one form of action to recover damages based on unjust enrichment." *Nat'l City Bank of Rome v. Busbin*, 175 Ga.App. 103, 107 (1985).

Furthermore, no cause of action can exist on these equitable, implied-contract grounds where an express contract governed the relationship between the parties. *CS-Lakeview at Gwinnett, Inc. v. Simon Prop. Group*, 283 Ga.App. 686, 691 (2007); *Baghdady v. Central Life Ins. Co.*, 224 Ga.App. 170, 171 (1996). Because McCaughey admits his relationship with BoA is governed by the release agreement, he cannot recover on equitable grounds; implied contract doctrine cannot be used to retroactively insert into a contract terms one wishes they had thought of in the first place. BoA's motion for summary judgment on McCaughey's equitable claims therefore must be granted.

BoA next moves for summary judgment on McCaughey's contract claim. Doc. # 22 at 7-8. BoA argues that even if BoA and Murphy constitute a single, conspiratorial entity, the entity's recovery from McCaughey was based on Boxwood's dealings with *Citibank*, not BoA. Thus, the entity held McCaughey liable for actions *unrelated* to the release, which means that recovering from McCaughey simply can not constitute a breach of that release.

The Court agrees. McCaughey's entire claim rests on the assumption that he was, in the end, held liable for his personal guaranty to BoA. In fact, he was not, but was held liable only for Boxwood's indebtedness to *Citibank*. The BoA-McCaughey release had nothing to do with the Citibank debt, and meant only one thing: that BoA could not go after McCaughey directly for *Boxwood's* debt. And nothing in that release limited BoA's ability to recover

2

from its other debtors (like Murphy), including the right to require such debtors to pursue all legal claims they might have against others (including McCaughey), then assign (as debt satisfaction) any such legal claim (legal claims can be pledged as an asset on a debt) to BoA.

Finally, because McCaughey alleges no actionable civil wrong, summary judgment to BoA is also proper on the civil conspiracy claim. *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga.App. 200, 206 (2002) ("'Absent the underlying tort, there can be no liability for civil conspiracy.' *O'Neal v. Home Town Bank*, 237 Ga.App. 325, 330(4), 514 S.E.2d 669 (1999)").

## IV. CONCLUSION

Bank of America's motion for summary judgment (doc. # 21) is *GRANTED*. (Its motion for a hearing is *DENIED*. Doc. # 25.) Plaintiff Thomas McCaughey's Complaint is *DISMISSED WITH PREJUDICE*.

This 30 day of July, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA